## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>Oswaldo Garcia-Torres and Laura P. Garcia<br>xxx-xx-0551 and xxx-xx-5373,<br>　　　　　Debtors | Case No. 18-17064-JGR<br>Chapter 13 |
| Carrington Mortgage Services, LLC, its<br>successors and/or assigns<br>　　　　　Movant,<br><br>vs.<br><br>Oswaldo Garcia-Torres and Laura P. Garcia<br>xxx-xx-0551 and xxx-xx-5373;<br>and Adam M Goodman, Trustee,<br>　　　　　Respondents. | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Carrington Mortgage Services, LLC, its predecessors, successors and/or assigns, ("Movant"), by and through its attorney, Christopher A. Young, respectfully moves that this Court, pursuant to 11 U.S.C. §362(d), enter Orders as more fully described below, granting relief from the Automatic Stay provisions of 11 U.S.C. §362(d) and in support thereof states the following:

1.　　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157, and the related procedural Orders entered by the United States District Court of Colorado.

2.　　　On August 13, 2018, the Debtors filed a petition for relief under 11 U.S.C. Chapter 13 of the United States Bankruptcy Code.

3.　　　The Debtors are indebted to Movant pursuant to a Promissory Note secured by a Deed of Trust, which was subsequently assigned to Movant.

4.　　　The property identified under said documents from which Movant has a valid lien and security interest is described as follows:

1

LOT 11, BLOCK 19, NORTH GLENN SIXTEENTH FILING, COUNTY OF ADAMS, STATE OF COLORADO

FOR TITLE REFERENCE, SEE DEED IN DOCUMENT #2010000059964

Also known as: **1280 Kennedy Drive, Northglenn, Colorado 80234**.

5.      Movant has a valid lien and security interest in said property as evidenced by copies of the Promissory Note and properly recorded Deed of Trust attached hereto as **Exhibits A** and **B**.

6.      Carrington Mortgage Services, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Deed of Trust.

7.      The Debtors are currently in default under the terms of said documents and under the terms of the Bankruptcy. The Debtors have not made the agreed upon payments for the months of January 1, 2019 thru March 1, 2019 each in the amount of $1,603.13, plus attorney fees/costs of $1,031.00. Debtors' Plan, which required direct payments to Movant has not been confirmed. A payment history is attached hereto as **Exhibit C** and made a part hereof.

8.      Movant requests that the automatic stay be terminated with respect to said property for cause, including lack of adequate protection of Movant's interest in said property.

9.      For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature.

10.     On March 12, 2019, as evidenced by the Affidavit pursuant to the Service Member Civil Relief Act of 2003, Laura Robles of Prober & Raphael (Movant's California Counsel), being first duly sworn and over the age of 18, performed a search on the Department of Defense Manpower Data Center (DMDC) information data banks. Said data banks did not possess any information indicating that the Debtors are currently on active duty as to all branches of the Military. A copy of the Military Status Report is attached hereto as **Exhibit D**.

WHEREFORE, the Movant prays:

That as provided under 11 U.S.C. §362(d), this Court grant relief from the automatic stay against the Respondent(s) to allow the Movant to foreclose on and/or take possession and control of said property described above and pursue statutory and other available remedies.

For an Order that, in addition to foreclosure, permits activity necessary to obtain possession

of said collateral; therefore, all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors.

For such further relief as this Court deems appropriate.

Date:  March 20, 2019

Respectfully submitted,

/s/ Christopher A. Young

Christopher A. Young #34207
CYLG, P.C.
1750 N. High Street
Denver, CO 80218
Phone 303-333-1252
Fax 303-399-3963
cyoung@cylgpc.com
Attorney for Movant
FHAC.241-6876.NF

3

Redacted                                          Redacted

# NOTE

**SEPTEMBER 3, 2010**
[Date]

**1280 KENNEDY DRIVE, NORTHGLENN, COLORADO 80234**
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means UNIVERSAL LENDING CORPORATION and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED FOUR THOUSAND ONE HUNDRED THIRTY-SEVEN AND 00/100ths Dollars (U.S.$204,137.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND SEVEN-EIGHTHS percent (4.8750%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on NOVEMBER 1, 2010. Any principal and interest remaining on the first day of OCTOBER, 2040, will be due on that date, which is called the "Maturity Date".
**(B) Place**
Payment shall be made at 6775 EAST EVANS AVENUE, DENVER, CO 80224 or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $1,080.31. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge          ☐ Other [Specify]
☐ Growing Equity Allonge

**5. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.
**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

Borrower Initials _____ LG _____

FHA Multistate Fixed Rate Note

EXHIBIT A

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
LAURA D GARCIA                                   -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

Pay to the order of:
Without recourse
Universal Lending Corporation

_____
Jason Hilliker, Note Administrator
Universal Lending Corporation



Recording Requested by

Bank of America, N.A.
~~WHEN RECORDED MAIL TO:~~

Bank of America, N.A.
1001 Liberty Avenue, Suite 675
Pittsburgh, PA 15222

**RECORDED AS RECEIVED**

5
2
5

This document was prepared by Bank of America, N.A.
*Jen Beck*
*1001 Liberty Ave Pittsburgh PA 15222*
~~See Exhibit B for assignments of record if applicable~~

Space Above for Recorder's Use

Redacted

### LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on January 3, 2013 between LAURA P GARCIA (the "Borrower(s)") and Bank of America, N.A., Original Lender/Beneficiary Lender or Servicer ("Lender"), amends and supplements that certain (Mortgage/Deed of Trust) (the "Security Instrument") dated the 30th of September, 2010 which covers the real and personal property described in the Security Instrument and defined therein as the 'Property' (See Exhibit A for Legal Description if applicable), located at 1280 KENNEDY DRIVE, NORTHGLENN, CO 80234.

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its[their] entirety as follows:

Borrower owes Lender the principal sum of two hundred four thousand four hundred sixty-six and 43/100, (U.S. Dollars) ($204,466.43). This debt is evidenced by Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2043. The Borrower[s] shall comply with all other covenants, agreements and requirements of the Security Instrument. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument shall remain unchanged, and the Borrower[s] and Bank of America, N.A. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the Security Instrument shall

WDGGovLnModAgree                    Page 1 of 4                    Redacted

remain in full force and effect and shall continue to be a first lien on the above-described property. All capitalized terms not defined herein shall have the same meanings as set forth in the Security Instrument.

SIGNED AND ACCEPTED THIS __31st__ DAY OF __January, 2013__

BY

_~Laura P Garcia~_

LAURA P GARCIA

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of __Colorado__, County of __Denver__ On this __31st__ day of __January__ before me the undersigned, a Notary Public in and for said State, personally appeared LAURA P GARCIA known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged that __N/A__ executed the same.

Witness my hand and official seal.

_~Amie Fontenot~_ ———— Notary Signature

__Amie Fontenot__ ———— Notary Public Printed Name Place Seal Here

My Commission Expires
__February 21, 2016__ ———— Notary Public Commission Expiration Date

AMIE FONTENOT
Notary Public
State of Colorado

Redacted

*********************************************************************************************************

As evidenced by their signatures below, the Co-Owner(s) consent to this Modification of the Mortgage.

**CO-OWNER(S)**

_____  Date: _____
Co-Owner(s) Signature

_____
Co-Owner(s) Name (typed or printed)

STATE OF _____

COUNTY OF _____

On _____ before me, _____

Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

_____ Notary Public Printed Name Place Seal Here

_____ Notary Public Commission Expiration Date

Redacted

**DO NOT WRITE BELOW THIS LINE**

*************************************************************************************

THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____          Dated: FEB 1 1 2013

Name: Theresa Carbone

Title : **ASSISTANT SECRETARY**

_____ [Space below this line for Acknowledgement] _____

STATE OF _Colorado_

COUNTY OF _Broomfield_

On _2/11/13_ before me, **Lynn Holdsworth** _____ Notary Public, personally

appeared _____ Theresa Carbone _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____  Notary Signature

**Lynn Holdsworth** _____  Notary Public Printed Name Place Seal Here

DEC 2 7 2015 _____  Notary Public Commission Expiration Date

LYNN HOLDSWORTH
NOTARY PUBLIC, STATE OF COLORADO
My Comm. Expires December 27, 2015

WDGGovLnModAgree          Page 4 of 4          Redacted

Case:18-17064-JGR Doc#:58 Filed:03/20/19 Entered:03/20/19 15:57:38 Page:10 of 46

Exhibit "A"

Legal Description

LOT 11, BLOCK 19, NORTH GLENN SIXTEENTH FILING, COUNTY OF
ADAMS, STATE OF COLORADO.

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #: redacted
_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| **Original Principal Amount: $204,137.00** | **FHA/VA/RHS Case No:** |
| **Unpaid Principal Amount: $190,706.28** | redacted |
| **New Principal Amount: $217,599.52** | **Loan No:** redacted |
| **New Money (Cap): $26,893.24** | |

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

This Loan Modification Agreement ("Agreement"), made this **15TH** day of **FEBRUARY, 2018**, between **LAURA P GARCIA AND, OSWALDO GARCIA** ("Borrower"), whose address is **1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234** and **CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A, ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **SEPTEMBER 3, 2010** and recorded on **SEPTEMBER 8, 2010** in INSTRUMENT NO. 2010000059964, **ADAMS COUNTY, COLORADO**, and (2) the Note, in the original principal amount of U.S. **$204,137.00**, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at **1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234**

Carrington Custom Loan Modification Agreement 11222017_307

Redacted   redacted

Page i

the real property described is located in **ADAMS COUNTY, COLORADO** and being set forth as follows:

**THE LAND REFERRED TO IN THIS DOCUMENT IS SITUATED IN THE STATE OF COLORADO, COUNTY OF ADAMS, CITY OF NORTH GLENN, AND DESCRIBED AS FOLLOWS:**

**LOT 11, BLOCK 19, NORTH GLENN SIXTEENTH FILING, COUNTY OF ADAMS, STATE OF COLORADO.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **MARCH 1, 2018** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$217,599.52**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$26,893.24** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.2500%**, from **MARCH 1, 2018**. The yearly rate of **4.2500%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$1,596.95**, beginning on the **1ST** day of **APRIL, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$1,070.46**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$526.49**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. If on **MARCH 1, 2048** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Redacted

5.  If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien.  This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Noate/Subordinate Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Subordinate Note/Mortgage.

6.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.  Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay. in full.  For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

Redacted    edacted

In Witness Whereof, I have executed this Agreement.

Borrower: LAURA P GARCIA                                   2/21/18
                                                          Date

Borrower: OSWALDO GARCIA                                  2-21-18
                                                          Date

Borrower: _____      _____
                                                          Date

Borrower: _____      _____
                                                          Date

Borrower: _____      _____
                                                          Date

Borrower: _____      _____
                                                          Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF COLORADO )
                          )  ss.
COUNTY OF _Jefferson_____ )

The Foregoing instrument was acknowledged before me this _21_ day of _February_,
20 _18_ by **LAURA P GARCIA, OSWALDO GARCIA**.

_____
Notary Public

Print Name _Yuan Liu_____

My commission expires: _March  03  2019_

```
YUAN LIU
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20154008605
MY COMMISSION EXPIRES MARCH 03, 2019
```

Carrington Custom Loan Modification Agreement 11222017_307

Page 4

Redacted   [edacted]

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A**

By Justin Covington, Director Special Servicing        (print name)        2-26-18
   For Carrington Mortgage Services, LLC Attorney in Fact        (title)        Date

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of ORANGE        )
                          )

On 2-26-18 before me _____ Luz E. Huerta _____ Notary Public, personally appeared ___ Justin Covington ___, the ___ Director ___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

```
LUZ E. HUERTA
Notary Public - California
Orange County
Commission # 2159191
My Comm. Expires Jul 4, 2020
```

Carrington Custom Loan Modification Agreement 11222017_307

Redacted

Date: **FEBRUARY 15, 2018**
Loan Number: [redacted]
Lender: **CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A**

Borrower: **LAURA P GARCIA, OSWALDO GARCIA**

Property Address: **1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Borrower: **LAURA P GARCIA**                                    Date: 2/21/18

Borrower: **OSWALDO GARCIA**                                  Date: 2-21-18

Borrower: _____             Date: _____

Borrower: _____             Date: _____

Borrower: _____             Date: _____

Borrower: _____             Date: _____

Carrington Custom Loan Modification Agreement 11222017_307

Page 6

Redacted   [redacted]

Date: **FEBRUARY 15, 2018**

Loan Number ▓▓▓▓▓▓

Lender: **CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A**

Borrower: **LAURA P GARCIA, OSWALDO GARCIA**

Property Address: **1280 KENNEDY DRIVE, NORTH GLENN, COLORADO  80234**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: **LAURA P GARCIA**                                          Date  2/21/18

Borrower: **OSWALDO GARCIA**                                       Date  2-21-18

Borrower: _____          Date _____

Borrower: _____          Date _____

Borrower: _____          Date _____

Borrower: _____          Date _____

Carrington Custom Loan Modification Agreement 11222017_307

Redacted



P.O. Box 3010
Anaheim, CA  92803

Dear Mortgagor(s)

Carrington Mortgage Services, LLC (CMS) requires that you complete this Name Affidavit if your name has been changed since the origination of your mortgage and/or does not match the name as it appears directly below and within the enclosed Documents.

**A Name Affidavit is also referred to as:**
Also Known As Certificate / AKA Statement – To show variations of your name used to execute other documents
Now Known As Certification / NKA Statement – To show a change in name due to marriage and/or divorce

**OSWALDO GARCIA**

_____
Signature

THIS IS TO CERTIFY THAT MY/OUR LEGAL SIGNATURE(S) IS/ARE WRITTEN AND TYPED BELOW.  This signature must <u>exactly match</u> signatures on all Documents.

I, **OSWALDO GARCIA** certify that I am also known as:

Oswaldo Garcia
_____
Print Name (Variation)

_____
Sample Signature (Variation)

_____
Print Name (Variation)

_____
Sample Signature (Variation)

STATE OF _Colorado_
COUNTY _Jefferson_

Subscribed and sworn to before me on _21th day February 2018_, by _Oswaldo Garcia_
_____ personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public Signature

Commission No: _2015400 8605_

Commission Expiration: _March 03 2019_

YUAN LIU
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 20154008605
MY COMMISSION EXPIRES MARCH 03, 2019

DC770

redacted

Loan No.: redacted
Borrower: LAURA P GARCIA, OSWALDO GARCIA

Address: 1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234

## Colorado
## Notice to Cosigner

You agree to pay the debt identified below although you may not personally receive any goods, services or money. You may be sued for payment although the person who receives the goods, services or money is able to pay. This notice is not the contract that obligates you to pay the debt. Read the contract for the exact terms of your obligation.

### IDENTIFICATION OF DEBT YOU MAY HAVE TO PAY

(Name of Debtor)

### CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A

### FEBRUARY 15, 2018

Loan Modification Agreement (Deed OF TRUST)

(Kind of Debt)

By signing below, you acknowledge receiving a copy of this Notice.

| | |
|---|---|
| Borrower | Date   Borrower                     Date |
| **LAURA P GARCIA** | **OSWALDO GARCIA** |

Redacted   edacted

This Document Prepared By:
Brandy Mangalindan
Carrington Mortgage Services, LLC
Carrington Document Services
Anaheim, CA 92806

Recording Requested By and Return To:
Carrington Mortgage Services, LLC
Carrington Document Services
1600 South Douglass Road, Suite 200A
Anaheim, CA 92806

Loan No: 
Case No:
Tax/Parcel

ASSUMPTION AND MODIFICATION AGREEMENT

This ASSUMPTION AND MODIFICATION AGREEMENT (the "Agreement") is made this, 15TH day of FEBRUARY, 2018 (the "Effective Date"), by and between CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A, acting on behalf of the owner of the Note, (the "Lender") and OSWALDO GARCIA (the "New Co-Borrower") and LAURA P GARCIA (the "Original Borrower") (collectively, the "Parties"). This Agreement amends and supplements, as set forth below, the Note made by LAURA P GARCIA, the Original Borrower, dated SEPTEMBER 3, 2010 in the original principal sum of $204,137.00 (the "Note") and the Mortgage or Deed of Trust (the "Security Instrument"), which was entered into as security for the Note, which was recorded in the Official Records of ADAMS COUNTY, COLORADO, on SEPTEMBER 8, 2010 as INSTRUMENT NO. 2010000059964, BOOK: N/A, PAGE: N/A, and which encumbers the real and personal property described in the Security Instrument (defined in the Security Instrument as the "Property"), known as
1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234

Attached hereto is the legal description as Exhibit A and incorporated herein.

Page 1 of 6

## W I T N E S S E T H:

WHEREAS, Lender is the holder, or is acting on behalf of the owner of the Note and Security Instrument and subsequent modifications thereof, if any (collectively, the "Loan Documents").

WHEREAS, Original Borrower will remain liable under the Note and Mortgage, as same may be modified, and will be allowed to convey an interest in the Property to New Co-Borrower.

WHEREAS, New Co-Borrower represents it has reviewed the terms of the Loan Documents, and it is eligible to assume  and perform all of the agreements, covenants and conditions of the Note, Security Instrument and other Loan Documents as same may be modified.

NOW, THEREFORE, in consideration of the mutual promises of the Parties hereto and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties do hereby covenant and agree as follows:

1.  <u>Consent to Conveyance.</u> Lender hereby consents to and/or ratifies the transfer of an interest in the Property to New Co-Borrower but the Lender expressly reserves the right to withhold its consent to any future sale or transfer of the Property as provided for in the Loan Documents.

2.  <u>Assumption and Modification.</u> New Co-Borrower hereby assumes all obligations under the Loan Documents, and agrees to perform all covenants, conditions, duties and obligations contained therein, and agrees to pay the Note as same may be modified and the obligations evidenced thereby in a prompt and timely manner in accordance with the terms thereof. Original Borrower acknowledges and agrees that he or she remains liable on the Note as same may be modified.

3.  <u>Representations and Warranties.</u> New Co-Borrower and Original Borrower represent and warrant as follows:

    i.   New Co-Borrower and Original Borrower currently occupy and will continue to occupy the Property as the primary residence.

    ii.  New Co-Borrower and Original Borrower have no defenses or rights of set-off against Lender or against the payment collection or enforcement of the indebtedness evidenced by the Loan Documents and owed to Lender.

    iii. No action has been brought or threatened that would in any way interfere with the right of New Co-Borrower and Original Borrower to execute this Agreement and perform all of the Original Borrower's and/or New Co-Borrower's obligations contained herein, in the Note, in the Security Instrument, or in any other Loan Documents as same may be modified.

    iv.  All financial statements provided to Lender, if any, of New Co-Borrower and Original Borrower, are true and correct in all respects, fairly present the respective financial conditions of the subjects thereof, as of the respective dates thereof and no material adverse change has occurred that affect New Co-Borrower's or Original Borrower's ability to repay the indebtedness evidenced by the Note and secured by the Mortgage, as same may be modified.

4.  <u>Modification Agreement.</u> The New Co-Borrower and Original Borrower acknowledge and agree to

the terms set forth in the Modification Agreement attached hereto as **Exhibit B** and incorporated herein. Except as modified by this Agreement, all the provisions of the Note, Security Instrument or any other Loan Documents are and shall remain in full force and effect and shall be performed by the New Co-Borrower and Original Borrower.

5. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their legal representatives, heirs, administrators, executors, successors and assigns.

6. This Agreement shall be governed, interpreted and construed by the law of the state in which the premises are located.

IN WITNESS WHEREOF, the undersigned Parties have executed this Assumption and Modification Agreement as of the Effective Date.

In Witness Whereof, I have executed this Agreement.

_____     2/21/18
Borrower: LAURA P GARCIA                                                 Date

_____     2/21/18
Borrower: OSWALDO GARCIA                                             Date


_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF COLORADO )
                                       )   ss.
COUNTY OF  Jefferson       )

The Foregoing instrument was acknowledged before me this  21  day of  Feburary ,
20 18  by **LAURA P GARCIA, OSWALDO GARCIA**.

_____
Notary Public

Print Name ____ Yuan Liu _____

My commission expires:  March  03  2019

```
                  YUAN LIU
               NOTARY PUBLIC
             STATE OF COLORADO
           NOTARY ID # 20154008605
      MY COMMISSION EXPIRES MARCH 03, 2019
```

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A.**

By _____ (print name)         _2-26-18_
        Justin Covington, Director Special Servicing                            Date
        For Carrington Mortgage Services, LLC Attorney In Fact

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of ORANGE                  )

On 2-26-18 ___ before me _____ Luz E. Huerta _____ Notary Public, personally appeared __JUSTIN COVINGTON__ , the __DIRECTOR__ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

LUZ E. HUERTA
Notary Public - California
Orange County
Commission # 2159191
My Comm. Expires Jul 4, 2020

## COMPLIANCE
## AGREEMENT

In consideration of **CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A.,** ("Lender") allowing the transfer of the property located at **1280 KENNEDY DRIVE, NORTH GLENN, COLORADO 80234** and the assumption by the undersigned of the referenced loan (the "Loan"), the undersigned agree, upon request of Lender or upon request of any person acting on behalf of Lender, to fully cooperate with Lender or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the original closing or with the assumption of the Loan. The undersigned further agree to execute such documents or take such action as Lender or such person acting on behalf of Lender reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Lender to sell, convey, seek guaranty, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the United States Department of Agriculture, the Department of Veterans Affairs, or any bonding authority.

The undersigned further agree to comply with any such request within a reasonable period of time as specified by Lender or by such person acting on behalf of Lender and to comply individually or jointly. Failure to comply shall constitute default under the Note and Security Instrument that evidence and secure the Loan, and Lender may pursue its available remedies.

The rights and powers of Lender under this Compliance Agreement shall inure to the benefit of any subsequent holder of said Note and Security Instrument.

**BY SIGNING BELOW THE UNDERSIGNED ACKNOWLEDGE THAT EACH FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.**

Date: _2-21-18_

_____

**OSWALDO GARCIA**

EXHIBIT "A"

THE LAND REFERRED TO IN THIS DOCUMENT IS SITUATED IN THE STATE OF COLORADO, COUNTY OF ADAMS, CITY OF NORTH GLENN, AND DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 19, NORTH GLENN SIXTEENTH FILING, COUNTY OF ADAMS, STATE OF COLORADO.

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 1 OF 10,   TD Pgs: 0 Doc
Type:DT Karen Long, Adams County, CO Recorded As Received

# Redacted

When Recorded Mail To:

UNIVERSAL LENDING CORPORATION
6775 EAST EVANS AVENUE
DENVER, COLORADO 80224
Loan Number: Redacted

# Redacted

[Space Above This Line For Recording Data]

**DEED OF TRUST**

FHA Case No. Redacted

THIS DEED OF TRUST ("Security Instrument") is made on SEPTEMBER 3, 2010, among the grantor, LAURA P GARCIA ("Borrower"), the Public Trustee of Adams County ("Trustee"), and the beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), which is acting solely as nominee for Lender (as hereinafter defined) and Lender's successors and assigns MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 tel. (888) 679-MERS. UNIVERSAL LENDING CORPORATION ("Lender") is organized and existing under the laws of COLORADO, and has an address of 6775 EAST EVANS AVENUE, DENVER, CO 80224. Borrower owes Lender the principal sum of TWO HUNDRED FOUR THOUSAND ONE HUNDRED THIRTY-SEVEN AND 00/100ths Dollars (U S $204,137.00) This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2040. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale the following described property located in Adams County, Colorado:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES

which has the address of  1280 KENNEDY DRIVE, NORTHGLENN,                           [Street, City],
Colorado          80234        [Zip Code]   ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

# Redacted

Borrower Initials  LG

FHA Colorado Deed of Trust

EXHIBIT B

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 2 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq and implementing regulations 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

GMD 0041 (499)  Page 2 of 7

Borrower Initials _____

FHA Colorado Deed of Trust

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 3 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower Initials _____

GMD 0041 (4/99) Page 3 of 7                                    FHA Colorado Deed of Trust

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 4 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However,

Borrower Initials

GMD 0041 (499) Page 4 of 7                                                                                          FHA Colorado Deed of Trust

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 5 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Borrower Initials ___

GMD 0041 (499) Page 5 of 7                              FHA Colorado Deed of Trust

*RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 6 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full

18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in paragraph 13. Trustee shall record a copy of the notice in the county in which the Property is located Trustee shall publish a notice of sale for the time and in the manner provided by applicable law and shall mail copies of the notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale  Lender or its designee may purchase the Property at any sale

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to  Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment In full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U S C 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument  Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

GMD 0041 (499)  Page 6 of 7

Borrower Initials _____

FHA Colorado Deed of Trust

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 7 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

20. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument [Check applicable box(es)]

☐ Condominium Rider               ☐ Growing Equity Rider          ☒ Rehabilitation Loan Rider
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                        LAURA P GARCIA            -Borrower

_____          _____ (Seal)
                                                                  -Borrower

_____ (Seal)   _____ (Seal)
                          Borrower                                -Borrower

STATE OF COLORADO,                     Adams        County ss:

The foregoing instrument was acknowledged before me this   3rd   day of   September 2010.
by LAURA P GARCIA.

Witness my hand and official seal.

My Commission Expires:                 _____
                                       Notary Public



MARNA L. DEINES
Notary Public
State of Colorado

GMD 0041 (499)  Page 7 of 7                          FHA Colorado Deed of Trust

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 8 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

EXHIBIT A

LOT 11, BLOCK 19, NORTH GLENN SIXTEENTH FILING, COUNTY OF
ADAMS, STATE OF COLORADO.

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 9 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

# Redacted

## REHABILITATION LOAN RIDER

THIS REHABILITATION LOAN RIDER is made this 3RD day of SEPTEMBER, 2010, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to UNIVERSAL LENDING CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

1280 KENNEDY DRIVE, NORTHGLENN, COLORADO 80234
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Loan proceeds are to be advanced for the rehabilitation of the premises in accordance with the Rehabilitation Loan Agreement dated SEPTEMBER 3, 2010 between the borrower and lender. This agreement is incorporated by reference and made a part of this mortgage. No advances shall be made unless approved by a Direct Endorsement Underwriter or the Assistant Secretary of Housing - Federal Housing Commissioner, Department of Housing and Urban Development

B. If the rehabilitation is not properly completed, performed with reasonable diligence, or is discontinued at any time except for strikes or lockouts, the lender is vested with full authority to take the necessary steps to protect the rehabilitation improvements and the property from harm, continue existing contracts or enter into necessary contracts to complete the rehabilitation. All sums expended for such protection, exclusive of the advances of the principal indebtedness, shall be added to the principal indebtedness, and be secured by the mortgage and be due and payable on demand with interest as set out in the note.

Page 1 of 2                                      FHA Multistate Rehabilitation Loan Rider - 12/91

RECEPTION#: 2010000059964, 09/08/2010 at 10:48:01 AM, 10 OF 10, Doc Type:DT TD
Pages: 0 Karen Long, Adams

C.  If the borrower fails to make any payment or to perform any other obligation under the loan, including the commencement, progress and completion provisions of the Rehabilitation Loan Agreement, and such failure continues for a period of 30 days, the loan shall, at the option of the lender, be in default.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rehabilitation Loan Rider.

_____(Seal)       _____, (Seal)
Borrower - LAURA P GARCIA                Borrower -

_____(Seal)       _____(Seal)
Borrower -                               Borrower -

_____(Seal)       _____(Seal)
Borrower -                               Borrower -

Page 2 of 2                    FHA Multistate Rehabilitation Loan Rider - 12/91

Case: 18-17864, LGR Doc: 53 Filed: 03/20/19 Entered: 03/20/19 15:57:38 Page 36 of 46

RECEPTION# : 2012000034165   05/11/2012 at 02:08:13 PM   1 of 1
Type: ASSIGN Konry, Adams County, CO/ Recorded as Received   TD Pgs : 0 Doc

Recording Requested By:
Bank of America
Prepared By: Bank of America
800-444-4302
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
~~Chapin SC 29036~~

# Redacted

Property Address:
1280 Kennedy Dr
Northglenn, CO 80234-3334

Redacted                    Redacted

This space for Recorder's use

MERS Phone #:   888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 451 7TH ST.SW #B-133, WASHINGTON DC 20410 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          UNIVERSAL LENDING CORPORATION
Borrower(s):              LAURA P GARCIA
Date of Deed of Trust:    9/3/2010
Original Loan Amount:     $204,137.00

Recorded in Adams County, CO on: 9/8/2010, book N/A, page N/A and instrument number 2010000059964

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
MAY 10 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
      Mercedes Judilla
      Assistant Secretary

State of California
County of Ventura

On  MAY 10 2012  before me,  Jovida Alvarez Diaz , Notary Public, personally appeared  Mercedes Judilla , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____ Jovida Alvarez Diaz _____   (Seal)
My Commission Expires:    Jan 20, 2014

JOVIDA ALVAREZ DIAZ
Commission # 1877876
Notary Public - California
Los Angeles County
My Comm. Expires Jan 20, 2014

WHEN RECORDED RETURN TO:
Carrington Mortgage Services
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Redacted

## CORPORATE ASSIGNMENT OF DEED OF TRUST

This Assignment is made without recourse to or against Carrington Mortgage Services, LLC or Bank of America, N.A., and without representation or warranty, express or implied, by Carrington Mortgage Services, LLC or Bank of America, N.A.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, WHOSE ADDRESS IS C/O 1600 SOUTH DOUGLASS ROAD, SUITE 200A, ANAHEIM, CA 92806, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust described with all interest secured thereby, all liens, and any rights due or to become due thereon to CARRINGTON MORTGAGE SERVICES, LLC, WHOSE ADDRESS IS 1600 S. DOUGLASS RD SUITE 200-A, ANAHEIM, CA 92806 (949)517-5235, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by LAURA P GARCIA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNIVERSAL LENDING CORPORATION, ITS SUCCESSORS AND ASSIGNS dated 09/02/2010, and recorded in Reception # 2010000059964 in the office of the Recorder of ADAMS County, Colorado.

Modification: REC DT. 03/02/2018 INSTR# 2018000017621.

Dated this 29th day of August in the year 2018
BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, by CARRINGTON MORTGAGE SERVICES, LLC, its Attorney-in-Fact



JENNIFER MOYLAN
VICE PRESIDENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 29th day of August in the year 2018, by Jennifer Moylan as VICE PRESIDENT of CARRINGTON MORTGAGE SERVICES, LLC as Attorney-in-Fact for BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

CYNTHIA ALBANO
COMM EXPIRES: 08/01/2020

CYNTHIA ALBANO
Notary Public - State of Florida
My Comm. Expires August 1, 2020
Commission # GG091222

Redacted

| Post Suspense Balance | -$3,886.13 |
|---|---|

| Transaction Type | Transaction Date | Amount Received | Post-petition Due Date | Post Amt Due | Post Applied | Principal | Escrow | Posting Over/Short | Credit to Post Suspense | Debit from Post Suspense | Post Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 8/13/2018 | $0.00 | 8/1/2018 | | | | | | $0.00 | $0.00 | $0.00 |
| Post-Petition | 10/01/18 | $1,603.13 | 9/1/2018 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| Post-Petition | 10/18/18 | $600.00 | | | | | | | $600.00 | $0.00 | $600.00 |
| Post-Petition | 10/26/18 | $800.00 | | | | | | | $800.00 | $0.00 | $1,400.00 |
| Post-Petition | 10/26/18 | $182.65 | | | | | | | $182.65 | $0.00 | $1,582.65 |
| Post-Petition | 11/29/18 | $800.00 | 10/1/2018 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$803.13 | $0.00 | $803.13 | $779.52 |
| Post-Petition | 12/27/18 | $800.00 | | | | | | | $800.00 | $0.00 | $1,579.52 |
| Post-Petition | 12/28/18 | $800.00 | 11/1/2018 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$803.13 | $0.00 | $803.13 | $776.39 |
| Post-Petition | 01/31/19 | $850.00 | 12/1/2018 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$753.13 | $0.00 | $753.13 | $23.26 |
| Post-Petition | 02/28/19 | $900.00 | | | | | | | $900.00 | $0.00 | $923.26 |
| Post-Petition Payment Due | 03/11/19 | | 1/1/2019 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$1,603.13 | $0.00 | $1,603.13 | -$679.87 |
| Post-Petition Payment Due | 03/11/19 | | 2/1/2019 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$1,603.13 | $0.00 | $1,603.13 | -$2,283.00 |
| Post-Petition Payment Due | 03/11/19 | | 3/1/2019 | $1,603.13 | $1,603.13 | $1,070.46 | $532.67 | -$1,603.13 | $0.00 | $1,603.13 | -$3,886.13 |

EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

Oswaldo Garcia-Torres and Laura P. Garcia
xxx-xx-0551 and xxx-xx-5373,
    Debtors

Carrington Mortgage Services, LLC, its
successors and/or assigns
    Movant,

vs.

Oswaldo Garcia-Torres and Laura P. Garcia
xxx-xx-0551 and xxx-xx-5373;
and Adam M Goodman,  Trustee,
    Respondents.

Case No. 18-17064-JGR
Chapter 13

### AFFIDAVIT PURSUANT TO THE SERVICEMEMBERS CIVIL RELIEF ACT OF 2003

I, Laura Robles, being of lawful age, first duly sworn, hereby state as follows:

1.  I am over the age of 18 and am an employee of Prober & Raphael, A Law Corporation.

2.  I have performed a search of the records maintained by the Department of Defense, Defense Manpower Data Center (DMDC) and have determined that, according to DMDC records (attached hereto as **Exhibit "1"**), Debtors, Oswaldo Garcia-Torres and Laura P. Garcia are not presently engaged in active duty military service as contemplated by the Servicemembers Civil Relief Act at 50 U.S.C. App. §521.  Said data banks did not possess any information indicating that the Debtors, Oswaldo Garcia-Torres and Laura P. Garcia are currently on active duty as to all branches of the Military.

Dated: 3/18/2019.

By: _____
Name:  Laura Robles
Title: Auditor

### CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

EXHIBIT D

State of California
County of Los Angeles

On March 18, 2019 before me, Carolyn Barraza _____, Notary Public, personally appeared Laura Robles, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                                          Notary Seal

_____
Signature of Notary Public

CAROLYN BARRAZA
Commission No. 2227779
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires  JANUARY 6, 2022

Department of Defense Manpower Data Center

Results as of : Mar-12-2019 05:34:44 PM

SCRA 4.10



### Status Report
### Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-0551 |
| Birth Date: | |
| Last Name: | GARCIA |
| First Name: | OSWALD |
| Middle Name: | |
| Status As Of: | Mar-12-2019 |
| Certificate ID: | GY6JY9V2D5XBWP6 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

EXHIBIT 1

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Mar-12-2019 05:33:23 PM

SCRA 4.10



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-5373
Birth Date:
Last Name:      GARCIA
First Name:     LAURA
Middle Name:    P
Status As Of:   Mar-12-2019
Certificate ID: B7FF20C1ZH10XK9

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>Oswaldo Garcia-Torres and Laura P. Garcia<br>xxx-xx-0551 and xxx-xx-5373,<br>Debtors | Case No. 18-17064-JGR<br>Chapter 13 |
| Carrington Mortgage Services, LLC, its<br>successors and/or assigns<br>Movant,<br>vs.<br><br>Oswaldo Garcia-Torres and Laura P. Garcia<br>xxx-xx-0551 and xxx-xx-5373;<br>and Adam M Goodman, Trustee,<br>Respondents. | |

### NOTICE OF HEARING OR PRELIMINARY HEARING
### OBJECTION DEADLINE: APRIL 9, 2019

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Automatic Stay, a copy of which is herewith served on you, has been filed with this Court. A hearing on the motion has been set for **APRIL 16, 2019 at 9:30 a.m.**, in Courtroom B, located at **U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Denver, Colorado 80202**. The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Christopher A. Young, attorney, whose address is listed below. If you file an objection, you are required to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**If you fail to file an objection**, the scheduled hearing will be **vacated** and an order granting the relief requested will be granted without further notice to you.

Date: March 20, 2019

Respectfully submitted,

/s/ Christopher A. Young
Christopher A. Young #34207
CYLG, P.C.
1750 N. High Street
Denver, CO 80218
Phone 303-333-1252
Fax 303-399-3963
cyoung@cylgpc.com
Attorney for Movant

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

Oswaldo Garcia-Torres and Laura P. Garcia
xxx-xx-0551 and xxx-xx-5373,
     Debtors

Carrington Mortgage Services, LLC, its
successors and/or assigns
     Movant,
vs.

Oswaldo Garcia-Torres and Laura P. Garcia
xxx-xx-0551 and xxx-xx-5373;
and Adam M Goodman, Trustee,
     Respondents.

Case No. 18-17064-JGR
Chapter 13

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2019, a true and correct copy of the **NOTICE OF HEARING OR PRELIMINARY HEARING**, together with a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY,** with exhibits attached, was sent by U.S. mail, proper postage affixed, or electronically, to the following:

Oswaldo Garcia-Torres
Laura P. Garcia
1280 Kennedy Drive
Northglenn, CO 80234

Wesley E. Parks, Jr.
1720 S. Bellaire St., Ste. 205
Denver, CO 80222

Adam M Goodman
Chapter 13 Trustee
P.O. Box 1169
Denver, CO 80201

U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St., Ste., 12-200
Denver, CO 80294

*s/Sherrie Shinkle*
Sherrie Shinkle

1